IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAIME D. SIERRA, )
)
        Plaintiff, )
)
v. ) 1:13CV29
)
SAMI HASSAN, MD, et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina, seeks declaratory relief and monetary damages pursuant to 42 U.S.C. § 1983 for alleged federal constitutional violations related to medical care while in custody. (*See* Docket Entry 2.) Defendants have filed motions to dismiss for failure to state a claim. (*See* Docket Entries 9, 18.) For the reasons that follow, Defendants' motions to dismiss should be granted.

## I. BACKGROUND

Plaintiff filed the instant complaint in this court on January 1, 2013. (Docket Entry 2.) Named as Defendants are Billy Martin, nurse supervisor at Albemarle Correctional Institution ("ACI"), and Dr. Sami Hassan, physician at ACI. Defendant Hassan filed his motion to dismiss on March 12, 2013 (Docket Entry 9) and Defendant Martin filed a separate motion to dismiss on April 22, 2013. (Docket Entry 18).

## II. DISCUSSION

### A. Standard of Review

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

## B. Deliberate Indifference

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotation and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834.

"Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his action were inappropriate; the official actually *must have* recognized that his actions were insufficient.

3

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "'Deliberate indifference entails something more than mere negligence. . . .'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 835). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Id.* To constitute deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).[1] Thus, "mere negligence or malpractice" does not constitute deliberate indifference. *Id.* at 852. Similarly, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). It is well settled, therefore, that a medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832-35.

### C. Allegations in Plaintiff's Complaint

Plaintiff alleges that he was scheduled for an appointment with Coastal Ear Nose and Throat Associates, PLLC ("Coastal") in New Bern, North Carolina on March 29, 2011. (Compl. ¶5, Docket Entry 2.) Plaintiff missed the appointment and was never told why he missed the appointment, nor was he told any information regarding rescheduling the

---

[1] *Miltier* has been overruled by *Farmer* to the extent that it allowed a finding of deliberate indifference upon constructive knowledge, but it is still good law for the proposition cited.

4

appointment. (*Id.*) He alleges that because of his chronic ear problems, he is supposed to have regular ear checkups every six months. (*Id.*) Plaintiff indicated that during the original evaluation at Coastal, he had already lost some of his hearing. (*Id.*) Plaintiff alleges that he has filed numerous sick requests, and on July 10, 2011, he filed a grievance about this problem at the Tabor Correctional Institution which was denied. (*Id.*) Over a year later, he also filed a grievance at ACI which was also denied.[2] (*Id.*)

Plaintiff alleges that as a result of his ear problems, he has already lost some hearing. (*Id.*) Plaintiff states that this will ruin his career as a singer and songwriter. (*Id.*) Plaintiff alleges that Dr. Hassan "refuses to schedule [Plaintiff] to see an ear specialist. He is the only doctor that practices medicine at this facility." (*Id.*) He further alleges that "Billie Martin RN is the Nursing Supervisor who is responsible for scheduling inmates sick-calls and appointments" and that this individual is not willing to assist Plaintiff. (*Id.*) Plaintiff seeks declaratory relief from the Court ordering that Plaintiff be seen by an ear specialist every six months and he also seeks monetary damages resulting from "medical neglect causing [Plaintiff's] loss of hearing." (*Id.* ¶6.)

**D. Analysis**

**1. Failure to State a Claim**

*Defendant Hassan*

As pointed out by Defendant Hassan, Plaintiff's complaint fails to assert constitutional violations. There is quite simply nothing in the complaint which shows that Dr. Hassan's conduct amounted to deliberate indifference to a serious medical need. At

---

[2] It appears from the Complaint that Plaintiff missed his scheduled appointment while at Tabor Correctional Institution. At some point, he was transferred from that prison to ACI.

5

most, Plaintiff appears to have a difference in opinion with Dr. Hassan on the issue of referring Plaintiff to an ear specialist. The only allegation against Dr. Hassan is that he refuses to schedule Plaintiff an appointment with an ear specialist, but Plaintiff provides no insight as to why Dr. Hassan would not schedule an appointment for him to be seen by an ear specialist. Moreover, there are no allegations to suggest that Dr. Hassan believed failure to refer Plaintiff to an ear specialist would result in substantial risk of harm. The fact that Plaintiff disagrees with the treatment or medical judgment of Dr. Hassan is not sufficient to state a claim of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Simply put, "[t]he courts will not intervene upon allegations of mere negligence, mistake or difference of opinion." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir.1977)). The allegations in the complaint are insufficient to show that Dr. Hassan ignored any serious medical needs of Plaintiff. Thus, under the standards of *Iqbal* and *Twombly*, Plaintiff's complaint as to Dr. Hassan does not "contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 678.

*Defendant Martin*

Likewise, Plaintiff's complaint fails to assert a claim against Defendant Martin. Plaintiff's sole allegation against Defendant Martin is that she is the nursing supervisor who is unwilling to assist him. There are no allegations of any wrongful conduct by Defendant Martin that rises to a level of constitutional violations. Again, Plaintiff appears to disagree with the course of treatment afforded to him which could arguably amount to mere negligence, but nothing more. As previously stated, "mere negligence or malpractice" does

not constitute deliberate indifference. *Miltier*, 896 F.2d at 852. Construing the facts in the light most favorable to Plaintiff, the complaint fails to state a claim against Defendant Martin "that is plausible on its face." *Iqbal*, 556 U.S. at 678.

## 2. Supervisory Liability

Defendant Martin alleges that Plaintiff failed to state a claim for supervisory liability against her. Defendant Martin may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability is not established merely by demonstrating that a subordinate was deliberately indifferent to a plaintiff's medical needs. *Miltier*, 896 F.2d at 854. Furthermore, in medical care claims, supervisory officials may rely upon the judgment of the medical staff to determine the course of treatment. *See id.*

To the extent Plaintiff asserts that Defendant Martin's liability is premised on the actions of her subordinates, Plaintiff's claim fails. There is nothing in the Complaint alleging Defendant Martin's knowledge of wrongful conduct by subordinates, nor are there factual

7

allegations to support "tacit authorization" on the part of Defendant Martin. Moreover, the evidence suggests that Defendant Martin's knowledge stems from her response to Plaintiff's Grievance No. 1347 in which it was noted that no sick calls were made in the year 2011, and that Plaintiff was last seen regarding ear problems on August 22, 2012.[3] (Compl. at 6.) By responding to the grievance, it appears that Defendant Martin's involvement is limited to the administrative remedy procedure, which falls short of engagement necessary for supervisory liability. *Paige v. Kupec*, No. Civ. A. AW–02–3430, 2003 WL 23274357, at *1 (D. Md. Mar. 31, 2003) (unpublished opinion), *aff'd*, 70 F. App'x 147 (4th Cir. July 31, 2003) (per curiam); *see also Knowles v. Lewis*, Case No. 5:11-CT-3113-FL, 2012 WL 3637241, at *5 (E.D.N.C. Aug. 22, 2012) (unpublished opinion). Based upon the foregoing, Plaintiff has failed to state a supervisory liability claim against Defendant Martin.

### 3. Qualified Immunity

Defendant Martin also asserts that she is entitled to the protections of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the official violated a constitutional right; and if so, (2) whether the right was "clearly established" at the time of its violation. *See, e.g., Rock for Life-UMBC v. Hrabowski*,

---

[3] Documents attached to the complaint may be considered in ruling on a motion to dismiss. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted).

411 Fed. App'x 541, 546-47 (4th Cir. 2010) (unpublished opinion). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[4] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Having found that Plaintiff has not stated a claim for a constitutional violation, this court finds that Defendant Martin is entitled to qualified immunity. *See Abney v. Coe*, 493 F. 3d 412, 415 (4th Cir. 2007) ("If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there.").

### III. CONCLUSION

For all these reasons, **IT IS RECOMMENDED** that the court **GRANT** Defendant Hassan's Motion to dismiss (Docket Entry 9) and **GRANT** Defendant Martin's Motion to Dismiss (Docket Entry 18).

*[signature]*
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
January 17, 2014

---

[4] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001) in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." 555 U.S. at 236.